IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MICHAEL LIMBURG,**

            **Plaintiff,**

    v.                                                                        **CASE NO. 25-3130-JWL**

**KANSAS DEPARTMENT OF
CORRECTIONS, ET AL.,**

            **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff and state prisoner Michael Limburg filed this pro se civil rights action seeking relief under 42 U.S.C. § 1983. Plaintiff is currently confined at Ellsworth Correctional Facility (ECF) in Ellsworth, Kansas. (Doc. 1.) He been granted leave to proceed in forma pauperis and has paid the initial partial filing fee. For the reasons set forth below, the Court will direct Plaintiff to file a complete and proper amended complaint curing the deficiencies identified in this order that leave this matter subject to dismissal in its entirety. Also before the Court is Plaintiff's motion for appointment of counsel (Doc. 4), which will be denied for the reasons stated in this order.

    **I.**        **Nature of the Matter before the Court**

Plaintiff names as Defendants the Kansas Department of Corrections (KDOC); ECF Warden Don Langford; Centurion Healthcare (Centurion), the healthcare provider at ECF; ECF Director of Nursing Don Woodard; and nurse practitioner (fnu[1]) Howl. (Doc. 1, p. 1-3.) As the background for this case, Plaintiff states that he is diabetic and has neuropathy of his feet. *Id.* at 3; (Doc. 1-1, p. 7). He explains that Crocs brand shoes were once "issued as secondary footwear" at

---

[1] "(fnu)" is an abbreviation for "first name unknown."

ECF and were considered "medical footwear" for individuals with diabetes to wear in the shower. (Doc. 1, p. 3.) In 2016, however, KDOC policy changed to generally disallow Crocs and Crocs-style shoes as a "threat to the security and saf[e]ty" of correctional facilities. (Doc. 1-1, p. 7.) KDOC nevertheless allowed inmates who had certain medical conditions such as diabetes to wear Crocs-style shoes if they had documentation of a medical need for them. (Doc. 1-1, p. 7.)

This medical exemption lasted into the time period when Defendant Woodard began working at ECF. *Id.* at 9. At some point[2], however, KDOC seized all Crocs-style shoes from inmates—including Plaintiff—regardless of their medical status, again allegedly due to safety and security concerns. *Id.* at 7. Despite this, Plaintiff asserts that Crocs-style shoes remain the only allowed footwear for inmates who are being transported. *Id.* at 11.

In February 2023, as Plaintiff was leaving the shower at ECF and wearing open-toed shower shoes, he stubbed the big toe on his right foot on a 4-inch cement partition. (Doc. 1, p. 3; Doc. 1-1, p. 7, 10-11.) Due to his neuropathy, Plaintiff did not immediately feel any damage to his foot. (Doc. 1-1, p. 10.) As he was getting ready for bed that night, however, he noticed blood on his sock and saw that his toe was swollen and red. *Id.* Plaintiff informed staff about his injury and staff notified the medical team, but Plaintiff was told that if it was "'not life threat[en]ing,'" he should come to sick call on Monday, three days later, because there were no weekend sick calls. (Doc. 1, p. 3-4; Doc. 1-1, p. 10.)

By Monday, Plaintiff's toe was swollen, red, and throbbing with pain. (Doc. 1, p. 3.) When he was seen at sick call by registered nurse (fnu) Lantern, who is not a party to this case, he was told that nothing could be done for a broken toe. (Doc. 1-1, p. 8.) Plaintiff received no further medical treatment at that time. *Id.* at 10.

---

[2] In various attachments to his complaint, Plaintiff provides three different years in which the widespread seizure of all Crocs-style shoes occurred. (*See* Doc. 1-1, p. 7, 21-22, 25.)

Four days later, Plaintiff returned to sick call because his toe was redder and still swollen. *Id.*; (Doc. 1, p. 3). Medical staff diagnosed an infection and he was prescribed antibiotics. *Id.*; (Doc. 1, p. 3). The infection appeared to get better, but then the swelling and redness returned, so Plaintiff returned to sick call and medical staff ordered an x-ray of Plaintiff's foot. (Doc. 1-1, p. 8, 10.) The x-rays showed that Plaintiff's toe was "shattered and osteomyelitis had set in," and Plaintiff saw a surgeon, Dr. Patrick Stiles. (Doc. 1, p. 3-4; Doc. 1-1, p. 10-11.) Plaintiff received a second, longer course of antibiotics, but the infection could not be cured and in July 2023, Dr. Stiles amputated Plaintiff's toe. (Doc. 1-1, p. 8, 11.) Plaintiff requested a prosthetic toe to assist him with balance and reduce foot cramping, but his request was denied, as was his request for "socks and shoes." (Doc. 1, p. 6; Doc. 1-1, p. 12.)

In Count I of this case, Plaintiff alleges the "[f]ailure to provide prompt and competent medical care." (Doc. 1, p. 4.) As supporting facts for Count I, Plaintiff points to the 3-day delay in initial evaluation of his toe injury because sick calls were not available on weekends and he points to the time that elapsed between his injury and the x-rays. *Id.* In Count II, Plaintiff asserts a "[f]ailure to provide proper medical footwear and confiscating [Crocs-style] shoes from those with medical needs under false pretense." *Id.* As supporting facts for Count II, Plaintiff points out that Crocs were initially issued as secondary and medical footwear at ECF, but were eventually seized based on an alleged threat to the safety and security of the facility, a rationale undermined by ECF or KDOC deeming Crocs the only footwear approved for transports. (Doc. 1, p. 4.)

In Count III, Plaintiff alleges inadequate assessment and treatment of his injury. *Id.* at 4. Specifically, Plaintiff alleges that at some point Defendant Howl assessed his injury, but when doing so, Defendant Howl considered false rumors spread by other nurses that Plaintiff was attempting to delay surgery and keep his toe. *Id.* at 5. In Count IV, Plaintiff alleges a "refus[al] to

3

give [adequate] medical aftercare and medical prosthesis to help facilitate recovery." *Id.* at 6. As supporting facts for Count IV, Plaintiff points to the denial of his requests for a prosthesis and for "socks and shoes." *Id.* As relief, Plaintiff seeks an order stating that he has the right to buy certain items from an approved vendor and monetary damages of $1,500,000.00. *Id.* at 7.

## II.     Screening Standards

Because Plaintiff is a prisoner and proceeds in forma pauperis, the Court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). During this screening, the Court liberally construes a pro se complaint such as this one and holds it to "less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

4

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted.)

### III. Discussion

#### a. Defendant KDOC

This matter is subject to dismissal as it is brought against the KDOC because the KDOC is not a proper defendant to a § 1983 action. As noted above, to state a claim under § 1983, Plaintiff must allege that "a *person* acting under color of state law" violated a right or rights Plaintiff is afforded by "the Constitution and laws of the United States." *See West,* 487 U.S. at 48-49 (emphasis added). "It has long been established states, state agencies, and state officials acting in their official capacities are not 'persons' under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)." *Thomas v. Knutson, et al.*, 2024 WL 2076315, *3 (10th Cir. May 9, 2024) (unpublished). Thus, state agencies are "not subject to liability under § 1983" and must be dismissed as Defendants when the Court screens a § 1983 complaint filed by a prisoner proceeding in forma pauperis. *See id.; see also Davis v. Bruce*, 215 F.R.D. 612, 618 (D. Kan. 2003), *aff'd in relevant part*, 129 Fed. Appx. 406, 408 (10th Cir. 2005) (unpublished).

Moreover, the State of Kansas and its agencies are absolutely immune from suits for money damages under the Eleventh Amendment, which presents a jurisdictional bar to suits against a state and "arms of the state." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)). Therefore, generally speaking, a suit in which an agent or department of the state is named as a defendant is "proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). There are three exceptions to this Eleventh Amendment

5

immunity: (1) when the State consents to suit, meaning it waives immunity; (2) when Congress properly eliminates the immunity through legislation; and (3) when there are ongoing violations of federal relief and the plaintiff seeks only prospective injunctive relief. *See Frank v. Lee*, 84 F.4th 1119, 1130-31 (10th Cir. 2023); *Umholtz v. Kan. Dept. of Soc. and Rehabilitation Servs.*, 926 F. Supp. 2d 1222, 1227 (D. Kan. 2013).

First, there is no indication that Kansas has consented to this suit. Second, Congress did not abrogate Kansas' sovereign immunity when it enacted § 1983. *See Quern v. Jordan*, 440 U.S. 332, 338-45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002); *see also McGee v. Corizon,* 831 F. Appx. 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted). Third, Plaintiff seeks money damages in this case. Thus, none of the exceptions to Eleventh Amendment immunity apply here and KDOC is subject to dismissal from this action.

### b. Failure to State a Claim

#### i. Legal Rights at Issue

The required, court-approved form for filing a complaint under 42 U.S.C. § 1983 contains a section titled "Cause of Action" in which a plaintiff is required to identify the "constitutional provisions or laws of the United States" under which his or her claims arose and then provide the facts that form the basis for each claim. (*See* Doc. 1, p. 4.) In this portion of the complaint filed in this case, Plaintiff has not identified the constitutional provision or federal law that was violated. *Id.* at 4-6. Although the Court liberally construes a pro se complaint, *see Erickson*, 551 U.S. at 94, it "will not . . . construct a legal theory on plaintiff's behalf," *see Whitney*, 113 F.3d at 1173-74.

It appears that all of the counts in this case may be intended to allege violations of the

Eighth Amendment to the United States Constitution[3], as made applicable to the States by the Fourteenth Amendment. But the Court may be misconstruing Plaintiff's intended claims. Thus, in each Count of his amended complaint, Plaintiff must clearly identify the constitutional provision or federal law that established the right he believes was violated. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

### ii. Factual Inconsistency

Determining whether Plaintiff has pled a plausible claim for relief in this matter is made more difficult by the factual inconsistencies throughout the complaint and the attachments to the complaint. Although the Court liberally construes a pro se pleading and its attachments, Plaintiff should ensure that he does not make conflicting allegations without explanation. For example, Plaintiff's claim that his rights were violated by the delay in assessment and treatment of the injury to his toe necessarily involves determining the length of the delay or delays in question. But the dates of the events in this case are far from clear.

The complaint itself does not include the history of Crocs or Crocs-style footwear in KDOC facilities; those allegations are found in the attachments to the complaint. But at various points in the attachments, Plaintiff alleges that the seizure of Crocs from all KDOC inmates, including those with a medical need for such footwear, occurred in 2017 (Doc. 1-1, p. 25); in

---

[3] The Eighth Amendment prohibits cruel and unusual punishment and requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." *Smith v. Allbaugh*, 987 F.3d 906, 910 (10th Cir. 2021) (internal quotation marks and citations omitted). An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

August 2020, *id.* at 21-22; and in 2022, *id.* at 7. Similarly, although Plaintiff states in his complaint only that he injured his toe in February 2023, the attachments to the complaint state that the injury occurred on February 14, 2023. (Doc. 1, p. 3; Doc. 1-1, p. 10, 33.) Plaintiff further asserts that he was made to wait three days for an initial medical assessment because sick call was not available on the weekend. But February 14, 2023 was a Tuesday.

Similar inconsistencies occur with other factual allegations. At one point in the complaint, Plaintiff says his first round of antibiotics was 8 days. (Doc. 1, p. 3.) In the attachments to the complaint, however, Plaintiff states that the first round of treatment was a 10-day course of antibiotics and two shots. (Doc. 1-1, p. 10.) Plaintiff claims that he received inadequate medical care, so the complaint should clearly reflect the medical care he received. Similarly, the attachments to the complaint state both that the period between the initial course of antibiotics and the return of the swelling and redness that required additional medical care was 7 days and that it was 3 weeks. *Id.* at 8, 10. The second course of antibiotics is described at different points as a 4-week course, *id.* at 8, and an 8-week course of intravenous antibiotics, *id.* at 11.

Shifting timelines reduce the Court's ability to determine whether Plaintiff has pled a plausible claim for relief. Plaintiff must ensure in his amended complaint that he refrains from such internal contradictions if at all possible. Additionally, Plaintiff should put all relevant dates in the complaint itself and not rely upon the Court to search his attachments to locate relevant dates and facts. *See Chavez v. Huerfano County*, 195 F. App'x 728, 730 (10th Cir. 2006) (unpublished) ("It is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case"). Plaintiff may attach additional pages to his amended complaint if he needs to in order to set out the material facts, but those pages should be clearly labeled as to which Count the facts are intended to support.

### iii. Centurion Health Care

Defendant Centurion is subject to dismissal from this action because Plaintiff has failed to allege facts that, if true, state a plausible claim for relief against Centurion. Plaintiff appears to base his claims against Centurion on Centurion's status as "the overseeing healthcare provider for all of the prisons in Kansas." (Doc. 1, p. 3.) In other words, Plaintiff does not allege that Centurion directly violated his constitutional rights; he seeks to hold Centurion liable because one or more of its employees violated Plaintiff's rights. If the Court has misconstrued Plaintiff's basis for liability of Centurion, Plaintiff must clearly identify in his amended complaint the way in which Centurion directly violated his federal rights.

A corporation such as Centurion may not be held liable simply because it employs an individual who violates another's rights because "vicarious liability is inapplicable to . . . § 1983 suits." *See Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished). In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). In this context, "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation." *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008).

Even liberally construing the pro se complaint and its attachments, Plaintiff has not identified or otherwise demonstrated the existence of a Centurion policy that led to the alleged

9

violations of Plaintiff's federal rights, nor has he demonstrated that Centurion knew of and approved a custom of unconstitutional misconduct by its employees. Thus, Centurion is subject to dismissal from this case because Plaintiff has failed to state a plausible claim against it.

### iv. Defendants Langford and Woodard

Defendants Langford and Woodard are subject to dismissal from this action because the complaint and the attachments to the complaint do not state a plausible claim against either of them. An essential element of a civil rights claim under § 1983 against an individual is that individual's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). In other words, a § 1983 claim must establish that each defendant personally caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Plaintiff alleges that Defendant Langford "was the overseeing administrator of" ECF at the time of the events that led to this case and that Defendant Woodard "was the Director of Nursing at [ECF] . . . and oversaw all treatment decisions." (Doc. 1, p. 2.) The complaint and attachments to the complaint do not make any further specific allegations regarding acts or inaction by Defendant Langford or Defendant Woodard. Thus, Plaintiff has failed to allege facts that show that either Defendant Langford or Defendant Woodard personally participated in an act or inaction

that violated Plaintiff's constitutional rights. Both are subject to dismissal from this case because Plaintiff has failed to state a plausible claim for relief against either of them.

### v. Defendant Howl

At the beginning of the complaint, Plaintiff explains that Defendant "Howl was the on-site nurse[]practitioner at the time [of the events] that makes decisions on treatment. [*sic*]" (Doc. 1, p. 2.) In the facts provided in support of Count III of the complaint, he further alleges:

> APRN Howl did assess a medical complaint during treatment by the plaintiff off of r[]umors of other nurses and hearsay of said same as I was trying to delay my surgery to try and keep my toe. This was not the case as the attempt to keep my toe was to be related to after the surgery and removal to obtain the toe for religious reasons.

(Doc. 1, p. 5 (all errors in original).)

At no point does Plaintiff state when Defendant Howl assessed his toe, what the effect of the assessment was or what treatment Defendant Howl decided was necessary, why Plaintiff believes Defendant Howl based decisions on false rumors or hearsay, how Defendant Howl violated Plaintiff's federal or constitutional rights, or what rights were violated. Even liberally construing the complaint and its attachments, there are insufficient specific factual allegations regarding Defendant Howl. Thus, Plaintiff has failed to state a claim against Defendant Howl on which relief can be granted.

As a related issue, Plaintiff describes his encounters with medical staff using the passive voice—stating he "was placed on an eight day treatment of antibiotics" and "X-ray[s] were done," for example—instead of identifying the individual taking the action—in this example, the person who prescribed antibiotics or ordered the x-rays. (Doc. 1, p. 3.) Similarly, in the attachments to the complaint, Plaintiff states that "[m]edical staff noted [his toe] was infected and a round of antiobioti[c]s were given [*sic*]," for example, but he does not identify who noted the infection or

11

who prescribed antibiotics. (Doc. 1-1, p. 10.) The use of collective terms such as "medical staff" without the identification of the individual involved makes it impossible for the Court to determine if Defendant Howl was that individual. In his amended complaint, Plaintiff must attribute actions to each Defendant that show a personal participation in the violation of a specific constitutional or federal right.

## IV. Amended Complaint Required

For the reasons set forth above, this case is subject to dismissal in its entirety. The KDOC is not a proper defendant to a § 1983 action and is immune from suit for money damages such as this one. Plaintiff has failed to allege sufficient facts to support a plausible claim for relief against any of the remaining Defendants. In addition, Plaintiff has failed to clearly identify the federal rights or constitutional provision he believes were violated and his alleged facts are internally inconsistent.

Plaintiff is therefore given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures these deficiencies. In order to add claims or significant fact allegations, Plaintiff must submit a complete amended complaint. See Fed. R. Civ. P. 15. An amended complaint does not simply supplement the original complaint; it completely replaces it. Any claims or allegations not included in the amended complaint are no longer before the Court.

To be clear, Plaintiff may not in the amended complaint simply refer the Court to the initial complaint or the attachments to the initial complaint. The amended complaint must contain all allegations and claims that Plaintiff intends to pursue in this action, including any allegations or claims from the initial complaint that Plaintiff wishes the Court to consider. If Plaintiff feels that attachments are necessary to assert a plausible claim, he must submit those attachments with his

amended complaint, even if they were submitted with the initial complaint.[4] That being said, Plaintiff should not utilize the form complaint only to refer the Court generally to an attached statement of facts, memorandum, or exhibit.

Plaintiff must write the number of this case (25-3130) at the top of the first page of his amended complaint. He must name each defendant in the caption of the complaint and again refer to each defendant in the body of the complaint. In each count of the amended complaint, he must adequately identify the federal constitutional provision or law he believes was violated. He must allege sufficient facts to show that each defendant personally participated in at least one of the federal constitutional violations alleged in the amended complaint, including dates, locations, and circumstances. If Plaintiff fails to timely file an amended complaint that states a plausible claim for relief against a named Defendant, this case will be dismissed for failure to state a claim without further prior notice to Plaintiff.

### V.     Motion for Appointment of Counsel (Doc. 4)

Also before the Court is Plaintiff's motion for appointment of counsel. (Doc. 4.) The motion appears to be on a form intended for filing in state court. *Id.* It alleges that "the assistance of an attorney is necessary to effectively represent [Plaintiff] in this matter" and that Plaintiff "is not financially able to pay an attorney to represent him." *Id.*

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th

---

[4] The Court notes that some of the attachments to Plaintiff's initial complaint appear irrelevant, such as papers filed in previous state court proceedings to show indigency (Doc. 1-1, p. 14-18); an outdated inmate account statement, *id.* at 20; and an Offender Disciplinary Summons, *id.* at 23. Plaintiff should ensure that any documents attached to his amended complaint are clearly relevant to the issues in this federal § 1983 action.

Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not yet clarified and may not be complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion without prejudice to refiling if this matter survives screening.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **September 2, 2025**, in which to file a complete and proper amended complaint that cures the deficiencies

identified in this order. The failure to file a timely amended complaint may result in the dismissal of this matter without additional notice for failure to state a claim on which relief can be granted. The clerk is directed to provide Plaintiff with the form for filing an amended complaint.

**IT IS FURTHER ORDERED** that the motion for appointment of counsel (**Doc. 4**) is **denied without prejudice**.

**IT IS SO ORDERED.**

DATED:   This 30th day of July, 2025, at Kansas City, Kansas.

S/   John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**