IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MICHAEL LIMBURG,**

    **Plaintiff,**

    v.                                                                 CASE NO. 25-3130-JWL

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Michael Limburg is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

### I.   Nature of the Matter before the Court

Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff is currently confined at the Ellsworth Correctional Facility in Ellsworth, Kansas ("ECF"). On July 30, 2025, the Court entered a Memorandum and Order (Doc. 6) ("M&O") finding that this matter is subject to dismissal in its entirety and granting Plaintiff the opportunity to file a complete and proper amended complaint to cure the deficiencies identified in the M&O. Plaintiff has filed an Amended Complaint (Doc. 7). This Court's screening standards are set forth in the M&O.

Plaintiff's claims are based on the medical care he received while incarcerated at ECF. Plaintiff names as Defendants: Centurion Healthcare ("Centurion"), the healthcare provider at ECF; ECF Director of Nursing ("DON") Woodard; APRN Nikkie Howl; Nurse Lantern; Medical Director Lieker; and Jane Doe.

Plaintiff claims that there was a delay in receiving proper medical care after he stubbed his toe on a 4-inch cement partition when exiting the shower at ECF with open-toed shoes on Friday, February 10, 2023. (Doc 7, at 2.) Plaintiff claims that he is diabetic and due to his neuropathy, he did not realize his toe was broken until later that night. *Id*. Plaintiff had to wait three days—until the following Monday—to receive medical care on February 13, 2023. *Id*. Plaintiff alleges that Nurse Lantern was the first nurse to look at his toe after the injury, and "did nothing at the time of triage." *Id*. at 1. She told Plaintiff that there was nothing that could be done for a broken toe. *Id*. Plaintiff alleges that he did not receive an x-ray until his third visit. *Id*. Plaintiff alleges that the delay in treatment allowed osteomyelitis to set in. *Id*. at 4.

Plaintiff claims that proper footwear was taken from Plaintiff under the guise of "threat to safety and security of the facility." *Id*. Plaintiff's claim involves the KDOC's seizure and disallowance of Crocs-style shoes at ECF. It is unclear whether this seizure and disallowance occurred in 2017, August of 2020 or 2022.[1] *See* Doc. 7–2, at 37, 51, 55. Plaintiff also claims that the "ADC has come through and told the facility to get rid of the 4-inch concrete barrier in the shower and the facility has yet to comply." *Id*.

As Count I, Plaintiff alleges cruel and unusual punishment due to the delay in receiving treatment. *Id*. at 5. Plaintiff alleges that he was denied treatment the night of the injury by Jane Doe, the nurse on duty that night. *Id*. She told Plaintiff that his injury was not life-threatening. *Id*. Plaintiff alleges that the delay allowed infection to set in. *Id*.

As Count II, Plaintiff alleges cruel and unusual punishment due to Nurse Lantern's failure to request an x-ray at the time of treatment, claiming that "there is nothing you can do for a broken

---

[1] The Court noted in the M&O that in various attachments to his complaint, Plaintiff provided three different years in which the widespread seizure of all Crocs-style shoes occurred. (Doc. 6, at n.2) (citing Doc. 1–1, at 7, 21–22, and 25).

toe" and "I don't think we need an x-ray it is clearly broken." *Id*. Plaintiff alleges that an x-ray would have shown that the toe was shattered and that there was an onset of infection. *Id*. Plaintiff alleges that treatment could have started earlier and prevented the eventual amputation of his toe. *Id*.

As Count III, Plaintiff alleges cruel and unusual punishment by Centurion Healthcare, alleging that it "set rules down that were ignored and not followed to the letter and then refused to allow treatment after treatment was needed for the effects of their mistreatment." *Id*. at 6. Plaintiff alleges that complaints were made known to them and they refused to step in to remedy the problems and refused to discipline staff that failed to provide treatment. *Id*.

As Count IV, Plaintiff alleges cruel and unusual punishment for the "refusal to take complaints of patient over hearsay." *Id*. at 7. Plaintiff alleges that APRN Nikkie Howl ignored Plaintiff's complaints of heart pain near the time of his operation based on hearsay of other nurses saying that Plaintiff wanted to keep his toe. *Id*. Plaintiff alleges that he was attempting to keep his toe after it was removed for religious reasons. *Id*. Plaintiff alleges that his complaints of chest pain were not taken seriously and were not reported to the doctor. *Id*. Plaintiff alleges that he had to tell the doctor about the problem and the pic-line was not used as the main port to administer the medication to perform the operation. *Id*. Plaintiff alleges that APRN Howl "failed to do her job by taking hearsay and rumor over the patient's true complaint as fact." *Id*.

As Count V, Plaintiff alleges cruel and unusual punishment based on Medical Director Lieker's refusal to allow Plaintiff to request a prosthetic toe to help with his balance and to prevent foot cramps. *Id*. Plaintiff claims that his toes shifted due to the loss of his big toe, and now his second toe is bent in such a way as to rub on the top of the shoe to cause an open sore. *Id*.

As Count VI, Plaintiff alleges cruel and unusual punishment based on DON Woodard's refusal and delay of treatment. *Id*.  Plaintiff alleges that Woodard "did enforce rules and regulations that are not set down and ignored rules and regulations set down by Centurion for the treatment of Diabetics, and did not set up an x-ray until after 30+ days of the initial treatment and visit." *Id*. (cleaned up).   Plaintiff alleges that the delay allowed the infection to spread and set to the point that his infected area had to be amputated.  *Id*.

For relief, Plaintiff seeks "medical treatment for life," prosthetics, medical shoes (or money to buy shoes/medical equipment), removal of Nikkie Howl for allowing rumors to influence her judgment, and allowing Plaintiff to see an outside doctor for treatment of diabetes and associated foot problems.  *Id*. at 8.

## II. Discussion

### 1. Defendants

#### A. Centurion

The Court found in the M&O that Plaintiff failed to identify or otherwise demonstrate the existence of a Centurion policy that led to the alleged violations of Plaintiff's federal rights.  He also failed to demonstrate that Centurion knew of and approved a custom of unconstitutional misconduct by its employees. Plaintiff has failed to cure this deficiency in his Amended Complaint.   In fact, he alleges that Centurion's policies were not followed.

#### B. Defendant Woodard

The Court found in the M&O that Plaintiff's claims against Defendant DON Woodard are subject to dismissal because Plaintiff failed to state a plausible claim against her. An essential element of a civil rights claim under § 1983 against an individual is that individual's direct personal participation in the acts or inactions upon which the complaint is based.  *Kentucky v. Graham*,

473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). In other words, a § 1983 claim must establish that each defendant personally caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

In his Amended Complaint, Plaintiff alleges that DON Woodard was responsible for the delay in treatment, but he does not explain how DON Woodard was involved with any of his treatment. Plaintiff has failed to cure the deficiencies noted in the M&O.

### C. Defendant Howl

Plaintiff alleges that Defendant Howl believed hearsay over his complaints of chest pain. Although Plaintiff alleges that she failed to tell the doctor, he acknowledges that he told the doctor and action was taken in response to his complaints of chest pain. Plaintiff has failed to show how APRN Howl violated his constitutional rights.

### 2. Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304

(10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm

requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Although Plaintiff has shown a serious injury and substantial harm, he must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit has found that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

7

Plaintiff attaches a Health Services Request Form dated February 13, 2023, in which he states "toe is bleeding." (Doc. 7–2, at 20.)  The Form reflects that he was seen by a nurse that day. *Id*.  Plaintiff filed another request on March 1, 2023, in which he states "wound bandage," and he was seen by a nurse that day.  *Id*. at 21.  Plaintiff does not include any other Health Services Request Forms or indicate any other instances in which he sought medical care.  He has not alleged that he put in a sick call request at any time from the date of his injury until he was seen by Nurse Lantern on Monday, February 13, 2023.

Plaintiff attaches a copy of his state court habeas petition filed under K.S.A. § 60-1501 on July 18, 2024, in the District Court of Ellsworth County, Kansas.  *Id*. at 33.  In his petition, Plaintiff's claims include the denial of proper and speedy medical treatment.  *Id*.  In his state habeas petition, he claims that four days after his sick call on the Monday following the injury, he went back to sick call and was given a one-week supply of antibiotics.[2] *Id*. at 38.  Plaintiff states that "three weeks later infection was back and x-ray was approved," and he received an x-ray two weeks later.  *Id*.  The x-ray showed that his toe was shattered, osteomyelitis had set in, and "antibiotics were given over the next 4 weeks."[3] *Id*.  His toe was amputated in July 2023. *Id*.

Plaintiff has failed to show that any defendant was deliberately indifferent regarding his medical care.  *See Pendergrass v. North Carolina Dep't of Public Safety*, 2015 WL 2380967, at *4 (W.D. N.C. 2015) (dismissing claims because plaintiff alleged, at most, negligence, and finding that by plaintiff's own allegations the nurses were not even aware of the serious risk of harm— that plaintiff's toe infection could lead to amputation—where plaintiff alleged that the nurses should have been able to recognize an infection but "failed to do so").

---

[2] Later in his petition, Plaintiff states that a ten-day supply of antibiotics was given, and two shots. (Doc. 7–2, at 40.)
[3] Later in his petition, Plaintiff states that an eight-week round of IV antibiotics was "ordered and failed to rid the infection." *Id*. at 41.

Plaintiff's claims suggest, at most, negligence. The Supreme Court in *Estelle* elaborated:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle,* 429 U.S. at 106; *see also Pendergrass*, 2015 WL 2380967, at *4 ("despite the unfortunate consequence of Plaintiff ultimately losing his toe following an infection, the allegations in this action are those of a garden-variety medical malpractice lawsuit") (citation omitted); *Greene v. Bd. of Regents of Univ. System of Georgia*, 2022 WL 3036630, at *5 (S.D. Ga. 2022) (finding that where plaintiff had to have toe amputated and alleged that doctor should have referred him to a vascular surgeon instead of prescribing antibiotic to treat infection and water pill to treat swelling, the doctor's decision was "a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment").

This Court has dealt with a case alleging an Eighth Amendment violation based on an alleged lack of medical care leading to an infection. In *Adkins v. Kansas*, the Court held that:

> A viable Eighth Amendment claim may arise when a prison medical practitioner (1) " 'fails to treat a medical condition so obvious that even a layman would recognize the condition,' [(2)] 'completely denies care although presented with recognizable symptoms which potentially create a medical emergency,' or [(3)] 'responds to an obvious risk with treatment that is patently unreasonable.' " *See Paugh*, 47 F.4th at 1154 (citation omitted). As the Court has previously explained to Plaintiff, however, cases finding a plausible claim of deliberate indifference to serious medical need are distinguishable from this matter. (*See* Doc. 9, p. 13-14 (citing *Lucas*, 58 F.4th at 1138).)
>
> One example cited was "a doctor who ordered daily infirmary visits and was aware of gangrenous black hand tissue for two weeks, yet

9

only prescribed Tylenol with codeine." *Id.* at 13 (citations omitted). Another involved a doctor who initially provided pain medication for a knee injury but later "denied further pain relief, told the patient 'to toughen up,' and delayed an MRI." *Id.* at 13-14 (citations omitted). Although the failure to mitigate risk of infection in a laceration may rise to the level of a constitutional violation, the facts in such cases are materially distinguishable from those alleged in this case. One example is *Griffin v. Kern Medical Center*, 2011 WL 4344133 (E.D. Cal. Sept. 14, 2011) (unpublished).

Robert Griffin was a pretrial detainee who slipped, hit his head on a steel table, and sustained "a deep cut" above his left eye. *Id.* at *1. Mr. Griffin was taken to a medical center, where the defendant doctor closed his wound with 21 stitches but, because a jail official began "intimidating and hurrying the doctor," the doctor did not bandage the wound or prescribe antibiotics for Mr. Griffin. *Id.* at *3-4. Mr. Griffin developed an infection that resulted in blindness in his left eye. *Id.* The United States District Court for the Eastern District of California found that Mr. Griffin had alleged sufficient facts to state a plausible claim against the doctor for deliberate indifference based on the failure to prescribe antibiotics, noting specifically that "[t]he severity of the cut suggests that the risk of infection was obvious." *Id.* at *4.

In contrast, on April 6, 2024, Plaintiff suffered a 4-to-5-millimeter cut to his knuckles while committing battery. He was promptly seen by Defendant Laha, who examined the cut and flushed it with saline, but who did not bandage the cut or take other steps to proactively prevent infection. Defendant Laha did not provide further treatment to Plaintiff that day, despite his yelling at her later that day during medication pass-out and his submitting a health services request form. Upon reassessing the cut the following morning, however, she altered her course of treatment. Simply put, there is no indication, even liberally construing all of Plaintiff's alleged facts in the amended complaint and taking them as true, that Defendant Laha acted on April 6, 2024 with the deliberate indifference required to state a plausible claim for relief under § 1983. Thus, the claim against Defendant Laha must be dismissed.

Plaintiff's claim against Defendant Centurion is based on alleged policies that led or encouraged Defendant Laha to violate Plaintiff's constitutional rights. Because Plaintiff has not pled a plausible claim that Defendant Laha violated his constitutional rights, his claim against Defendant Centurion must be dismissed as well.

*Adkins v. Kansas*, 2025 WL 1282661, at *6–7 (D. Kan. May 2, 2025). Likewise, Plaintiff's claims regarding his medical care are subject to dismissal for failure to state a claim of cruel and unusual punishment. His claims suggest, at most, negligence or medical malpractice. Plaintiff should show good cause why these claims should not be dismissed for failure to state a claim.

### 3. Denial of Medical Equipment

Plaintiff alleges that he was not allowed to request a prosthetic toe. Plaintiff alleges that Defendant Lieker refused to allow Plaintiff to request a prosthetic toe to help with his balance and to prevent foot cramps. Plaintiff claims that his toes shifted due to the loss of his big toe, and now his second toe is bent in such a way as to rub on the top of the shoe to cause an open sore. Plaintiff does not allege that he actually requested a prosthetic toe or that a doctor ordered a prosthetic toe. Although he attaches his Health Services Request Forms to his Amended Complaint, none of them address a request for a prosthetic toe. *See* Doc. 7–2. He has also failed to allege how Defendant Lieker, the Medical Director at ECF, prevented him from requesting a prosthetic or any other medical device from his medical providers.

Plaintiff has not alleged that a prosthetic toe was ordered by a doctor or that it was the only option available to remedy the effects of his balance issues and his second toe rubbing on the top of his shoe. *See Gillen v. D'Amico*, 237 F. App'x 173, 174 (9th Cir. 2007) (finding no deliberate indifference based on the denial of replacement prosthetic leg and stating "[a] difference of opinion between Gillen and his treating physicians about the offered alternatives and the preferred course of medical treatment does not constitute an Eighth Amendment violation") (citation omitted); *see also Rivers v. Emmons*, 2018 WL 1221866, at *5 (S.D. Ga. 2018) ("Because prostheses are not always medically necessary for amputees, Mr. Emmons' knowledge of Plaintiff's amputation alone was insufficient to create a subjective awareness of a serious medical need.") (citing *Simpson*

*v. Holder*, 200 F. App'x 836, 839–40 (11th Cir. 2006) (no deliberate indifference for denial of prosthetic leg where plaintiff's weight precluded fitting); *Still v. Darbouze*, Civil Action No. 2:11cv141-MHT, 2014 WL 1239118, *3-4 (M.D. Ala. Mar. 25, 2014) (same where plaintiff faced risk of falling and his leg and hip lacked sufficient strength)).

Plaintiff has not alleged that he addressed the issue with a medical provider. He has not shown that any defendant knew of and disregarded an excessive risk to his health or safety. *See Jones v. Fogam*, 2014 WL 545404, at *2 (S.D. Ga. 2014) ("So even if Jones was legally entitled to a prosthetic leg, he must still plead facts showing that Fogam was both 'aware of facts from which the inference would be drawn that a substantial risk of serious harm exists, and [that] he . . . dr[e]w the inference.'") (citing *Franklin v. Curry,* 738 F.3d 1246, 1250 (11th Cir. 2013) (quotes and cite omitted); *Ransom v. City of Camden, Ala.,* 2014 WL 99108 at *4 (S.D. Ala. Jan.10, 2014)). Plaintiff should show good cause why his claim based on his alleged inability to request a prosthetic toe should not be dismissed for failure to state a claim.

### 4. Statute of Limitations

Plaintiff does not indicate if or when he sought care for his balance issues, cramping, or the open sore on his second toe following his amputation. He alleged in his state habeas case that his toe was amputated in July 2023. (Doc. 7–2, at 38.) He alleges in this case that he was denied proper medical care in February 2023, and several weeks thereafter. His Count I is based on Nurse Jane Doe's failure to provide medical treatment the night of the injury—February 10, 2023. His claim in Count II is based on Nurse Lantern's failure to request an x-ray when she examined him on February 13, 2023. In Count IV, Plaintiff alleges that APRN Nikkie Howl ignored Plaintiff's complaints of heart pain "near the time of his operation." Plaintiff also claims that proper footwear was taken from him in either 2017, August of 2020 or 2022. Plaintiff filed this

case on July 9, 2025. Any claims accruing prior to July 9, 2023, would be barred by the applicable statute of limitations.

The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

**III. Motions**

    **1. Motion for Leave to Proceed in Forma Pauperis (Doc. 9)**

Plaintiff has filed a second motion for leave to proceed in forma pauperis. Plaintiff's initial motion (Doc. 3) was granted by the Court on July 9, 2025. (Doc. 5.) Therefore, Plaintiff's second motion is denied as moot.

13

### 2. Motion to Compel (Doc. 10)

Plaintiff has filed a motion to compel, asking the Court to compel Centurion and the KDOC to release Plaintiff's medical records. (Doc. 10, at 1.) Plaintiff seeks a release of his records to the Court to determine the correct dates and times of treatment. *Id*. This case has not passed screening and discovery is premature.

Plaintiff also seeks clarification as to why Centurion "is immune to court civil action." *Id*. at 2. The Court did not find in the M&O that Centurion was "immune" from suit. Rather, the Court found that a corporation such as Centurion may not be held liable simply because it employs an individual who violates another's rights because "vicarious liability is inapplicable to . . . § 1983 suits." *See Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished). The Court found that Plaintiff failed to identify or otherwise demonstrate the existence of a Centurion policy that led to the alleged violations of Plaintiff's federal rights, nor did he demonstrate that Centurion knew of and approved a custom of unconstitutional misconduct by its employees. Thus, the Court found that Centurion is subject to dismissal from this case because Plaintiff failed to state a plausible claim against it. As set forth above, Plaintiff failed to cure this deficiency in his Amended Complaint. This case is subject to dismissal, and Plaintiff's motion is denied.

## IV. Response Required

Plaintiff is required to show good cause why his Amended Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **November 10, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to proceed in forma pauperis (Doc. 9) is **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Doc. 10) is **denied.**

**IT IS SO ORDERED.**

Dated October 9, 2025, in Kansas City, Kansas.

                                              **S/   John W. Lungstrum**
                                              **JOHN W. LUNGSTRUM**
                                              **UNITED STATES DISTRICT JUDGE**