IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL LIMBURG,

    **Plaintiff,**

    v.                                                                                                 CASE NO. 25-3130-JWL

KANSAS DEPARTMENT OF
CORRECTIONS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this pro se civil rights action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff is currently confined at the Ellsworth Correctional Facility in Ellsworth, Kansas ("ECF"). On October 9, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC") ordering Plaintiff to show good cause why his Amended Complaint should not be dismissed for the reasons set forth in the MOSC. This matter is before the Court on Plaintiff's response (Doc. 12).

Plaintiff's allegations are set forth in detail in the MOSC. In summary, Plaintiff claims that there was a delay in receiving proper medical care after he stubbed his toe on a 4-inch cement partition when exiting the shower at ECF with open-toed shoes on Friday, February 10, 2023. (Doc 7, at 2.) He claims that due to the delay, his toe became infected and was later amputated.

Plaintiff attaches a Health Services Request Form dated February 13, 2023, in which he states "toe is bleeding." (Doc. 7–2, at 20.) The Form reflects that he was seen by a nurse that day. *Id*. Plaintiff filed another request on March 1, 2023, in which he states "wound bandage," and he was seen by a nurse that day. *Id*. at 21. Plaintiff does not include any other Health Services Request Forms or indicate any other instances in which he sought medical care. He has not

1

alleged that he put in a sick call request at any time from the date of his injury until he was seen by Nurse Lantern on Monday, February 13, 2023.

Plaintiff attaches a copy of his state court habeas petition filed under K.S.A. § 60-1501 on July 18, 2024, in the District Court of Ellsworth County, Kansas. *Id*. at 33. In his petition, Plaintiff claims the denial of proper and speedy medical treatment. *Id*. He claims that four days after his sick call on the Monday following the injury, he went back to sick call and was given a one-week supply of antibiotics.[1] *Id*. at 38. Plaintiff states that "three weeks later infection was back and x-ray was approved," and he received an x-ray two weeks later. *Id*. The x-ray showed that his toe was shattered, osteomyelitis had set in, and "antibiotics were given over the next 4 weeks."[2] *Id*. His toe was amputated in July 2023. *Id*.

The Court found in the MOSC that Plaintiff failed to state a claim against various defendants. The Court found that: Plaintiff failed to identify or otherwise demonstrate the existence of a Centurion policy that led to the alleged violations of Plaintiff's federal rights, and failed to demonstrate that Centurion knew of and approved a custom of unconstitutional misconduct by its employees; although Plaintiff alleged that DON Woodard was responsible for the delay in treatment, he does not explain how DON Woodard was involved with any of his treatment; and Plaintiff failed to show how APRN Howl violated his constitutional rights.

The Court also found that Plaintiff's claims suggest, at most, negligence or medical malpractice, and that he failed to show that any defendant was deliberately indifferent regarding his medical care. *See Pendergrass v. North Carolina Dep't of Public Safety*, 2015 WL 2380967, at *4 (W.D. N.C. 2015) (dismissing claims because plaintiff alleged, at most, negligence, and

---

[1] Later in his petition, Plaintiff states that a ten-day supply of antibiotics was given, and two shots. (Doc. 7–2, at 40.)
[2] Later in his petition, Plaintiff states that an eight-week round of IV antibiotics was "ordered and failed to rid the infection." *Id*. at 41.

finding that by plaintiff's own allegations the nurses were not even aware of the serious risk of harm—that plaintiff's toe infection could lead to amputation—where plaintiff alleged that the nurses should have been able to recognize an infection but "failed to do so").

Plaintiff also alleged that he was not allowed to request a prosthetic toe. The Court found in the MOSC that Plaintiff does not allege that he actually requested a prosthetic toe or that a doctor ordered a prosthetic toe. Although he attaches his Health Services Request Forms to his Amended Complaint, none of them address a request for a prosthetic toe. *See* Doc. 7–2. He also failed to allege how Defendant Lieker, the Medical Director at ECF, prevented him from requesting a prosthetic or any other medical device from his medical providers.

Plaintiff has not alleged that a prosthetic toe was ordered by a doctor or that it was the only option available to remedy the effects of his balance issues and his second toe rubbing on the top of his shoe. *See Gillen v. D'Amico*, 237 F. App'x 173, 174 (9th Cir. 2007) (finding no deliberate indifference based on the denial of replacement prosthetic leg and stating "[a] difference of opinion between Gillen and his treating physicians about the offered alternatives and the preferred course of medical treatment does not constitute an Eighth Amendment violation") (citation omitted); *see also Rivers v. Emmons*, 2018 WL 1221866, at *5 (S.D. Ga. 2018) ("Because prostheses are not always medically necessary for amputees, Mr. Emmons' knowledge of Plaintiff's amputation alone was insufficient to create a subjective awareness of a serious medical need.") (citing *Simpson v. Holder*, 200 F. App'x 836, 839–40 (11th Cir. 2006) (no deliberate indifference for denial of prosthetic leg where plaintiff's weight precluded fitting); *Still v. Darbouze*, Civil Action No. 2:11cv141-MHT, 2014 WL 1239118, *3-4 (M.D. Ala. Mar. 25, 2014) (same where plaintiff faced risk of falling and his leg and hip lacked sufficient strength)).

Plaintiff has not alleged that he addressed the issue with a medical provider. He has not

shown that any defendant knew of and disregarded an excessive risk to his health or safety. *See Jones v. Fogam*, 2014 WL 545404, at *2 (S.D. Ga. 2014) ("So even if Jones was legally entitled to a prosthetic leg, he must still plead facts showing that Fogam was both 'aware of facts from which the inference would be drawn that a substantial risk of serious harm exists, and [that] he . . . dr[e]w the inference.'") (citing *Franklin v. Curry,* 738 F.3d 1246, 1250 (11th Cir. 2013) (quotes and cite omitted); *Ransom v. City of Camden, Ala.,* 2014 WL 99108 at *4 (S.D. Ala. Jan.10, 2014)). Plaintiff was ordered to show good cause why his claim based on his alleged inability to request a prosthetic toe should not be dismissed for failure to state a claim.

The Court also found that any claims accruing prior to July 9, 2023, would be barred by the applicable two-year statute of limitations. Plaintiff does not indicate if or when he sought care for his balance issues, cramping, or the open sore on his second toe following his amputation. He alleged in his state habeas case that his toe was amputated in July 2023. (Doc. 7–2, at 38.) He alleges in this case that he was denied proper medical care in February 2023, and several weeks thereafter. His Count I is based on Nurse Jane Doe's failure to provide medical treatment the night of the injury—February 10, 2023. His claim in Count II is based on Nurse Lantern's failure to request an x-ray when she examined him on February 13, 2023. In Count IV, Plaintiff alleges that APRN Nikkie Howl ignored Plaintiff's complaints of heart pain "near the time of his operation." Plaintiff also claims that proper footwear was taken from him in either 2017, August of 2020, or 2022. Plaintiff filed this case on July 9, 2025.

Plaintiff's response fails to show good cause why his claims should not be dismissed for the reasons set forth in the MOSC. In his response, Plaintiff claims that he was not treated with dignity, the facility does not care about inmates, staff did not want to deal with him the night of his injury, and he would have received better treatment if he was out of custody and homeless on

the street.  (Doc. 12, at 1.)   Plaintiff claims that someone tripped on the same partition before he did, and it should have been fixed.   He also claims that the crocs should not have been taken away from inmates.  *Id*.   He also claims that he was denied a prosthetic toe because he did not qualify for one, but another inmate received a special glove with a fingertip after that inmate lost the tip of his finger.  *Id*.   Plaintiff claims that even with his neuropathy he could feel his toe throbbing and was only offered aspirin.   *Id*. at 2.

Plaintiff's response fails to show good cause why his claims should not be dismissed for failure to state a claim.   While the Court sympathizes with Plaintiff's circumstances, his claims suggest negligence or medical malpractice.   *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").   Furthermore, any claim regarding the facility's failure to address the partition or the decision to disallow crocs—or any other claims accruing prior to July 9, 2023—would be barred by the applicable two-year statute of limitations.

**IT IS THEREFORE ORDERED** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED.**

**Dated November 14, 2025, in Kansas City, Kansas.**

S/   John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**